**Alexander DRIGGERS, and wife, Margie Ann Driggers, Plaintiffs,**

v.

**SOFAMOR, S.N.C., F/K/A Sofamor, S.A.; Sofamor, Inc.; and Sofamor Danek Group, Inc., Defendants.**

No. 4:95CV00750.

United States District Court, M.D. North Carolina.

Dec. 31, 1998.

Notice of Appeal Filed Jan. 29, 1999.

William F. Horsley, Greensboro, NC, John J. Cummings, III, New Orleans, LA, Darryl J. Tschirn, La Jolla, CA, for plaintiff.

James Donald Cowan, Jr., Greensboro, NC, Stephen S. Phillips, Philadelphia, PA, for defendant.

## MEMORANDUM OPINION

TILLEY, District Judge.

Plaintiffs Alexander and Margie Ann Driggers ("Driggers") filed a Complaint against the Defendants Sofamor, S.N.C., f/k/a Sofamor, S.A.; Sofamor, Inc.; and Sofamor Danek Group, Inc. ("Sofamor") asserting claims for (1) fraudulent marketing; (2) negligent misrepresentation; (3) strict liability; (4) negligence; (5) negligence per se; (6) breach of implied warranty; and (7) loss of consortium. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1332. Because most of the claims are barred by the statute of limitations and because Driggers has failed to produce evidence of causation, Sofamor's Motion for Summary Judgment [Doc. # 33] as to all claims is GRANTED. As no claims remain, this case will be DISMISSED. Defendants' Motion to Exclude Testimony of Dr. William J. Mitchell [Doc. # 58] and Motion to Preclude or Limit Evidence [Doc. # 56] are DENIED AS MOOT.

### I.

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. 2505. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If successful, the burden shifts and the opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The facts presented in the light most favorable towards Driggers are as follows. On November 7, 1970, Driggers fell at his workplace, which resulted in pain and back and leg injuries. (Driggers Dep. at 29; Mitchell Report at 1, Ex. 13, Pl.'s Opp'n Defs.' Mot. Summ. J. [Doc. # 45].) Over the next eleven years, Driggers underwent five surgical procedures including a posterior lumbar fusion in 1971; the removal of lumbar osteophytes in 1973; a sensory rhizotomy in 1976; a posterolateral lumbar fusion in 1980; and an anterior lumbar fusion at L5–S1 in 1981. (Mitchell Report at 2; Mitchell Dep. at 27–30; Beaver Dep. at 15; Urbaniak Dep. at 32–36.) In July 1985, Driggers was in an automobile accident and his physician, Dr. James Urbaniak, concluded that this accident caused a pseudoarthrosis, or a nonunion of the lumbar bone mass, from L5 to S1. (Urbaniak Dep. at 44; Mitchell Dep. at 31–32.)

On November 24, 1986, Dr. Urbaniak performed surgery on Driggers and attached the Cotrel–Dubousset System ("CD system") designed by Sofamor to L5 to S1 of Driggers' spine. (Urbaniak Dep. at 26, 50.) Dr. Urbaniak did not inform Driggers that the device had been implanted in his spine until the day after his surgery. (Driggers Dep. at 62–63; Urbaniak Dep. at 68.) Furthermore, Dr. Urbaniak did not warn Driggers of the risks associated with the CD system, nor did he tell Driggers that the device had not been approved by the FDA for pedicle use. (*Id.*)

According to Dr. William Mitchell, an orthopedic surgeon and plaintiffs' expert, "the purpose of using instrumentation in the lumbar area for fusion surgery" is "to stop motion so that fusion can occur" (Mitchell Dep. at 33), which in this case was accomplished. (Urbaniak Dep. at 54–55; Beaver Dep. at 31, 36, 39–40).

Driggers indicated that he suffered from severe pain immediately after the surgery in 1986. (Driggers Dep. at 62). As early as 1987 or 1988, Driggers suspected that the CD system was causing some or all of his pain. (*Id.* at 62–66, 71.) In 1989, Dr. Robert Beaver took x-rays of Driggers' back and informed him that something in the hardware had broken. (*Id.* at 65). In December 1989, Driggers consulted with Dr. Beaver about "whether or not some of the persistent pain that he was having in his lower back was related to the internal fixation device ... and he questioned whether or not there was a potential necessity for removing the plate and screws from the lumbar spine." (Beaver Dep. at 28.)

In the spring of 1990, Driggers was in another automobile accident. (Driggers Dep. at 73.) In a letter to Dr. Beaver dated May 13, 1991, Driggers stated that "due to the wreck, it has caused an increase in my problems with more pain in my lower back." (Beaver Dep. at 63.) However, in his deposition, Driggers stated that the accident caused pain in his shoulder and upper back, but not in his lower back or legs. (Driggers Dep. at 73.)

A July 1, 1992 medical report prepared by Dr. Brian Howard, a radiologist, indicated that the "[l]ocking screw of the right L5 pedicle system is disrupted and has

migrated proximally. This suggests possible unlocking of the right proximal system although I do not see evidence for pedicle screw disruption." (Driggers Med. Records, Ex. 12, Pls.' Opp'n Defs.' Mot. Summ. J. [Doc. # 45]; Mitchell Report at 3). In 1997, Dr. Matthew Ohl, an orthopedic surgeon, advised Driggers that the screw that migrated in his back should be explanted. (Driggers Dep. at 70–73.) After reviewing Driggers' medical records, Driggers' expert witness, Dr. Mitchell, also concluded that the screw should be explanted to prevent further migration. (Mitchell Report at 3.) Dr. Mitchell stated in his report that:

> It is my professional opinion, with a reasonable degree of medical certainty, that the instrumentation performed its role as a spinal stabilizer and a solid fusion at the L5–S1 level was achieved after the final operation on November 23, 1986. However, the unit did show a complication in its system design, which indicated that it is incapable of bearing and withstanding the loads, stresses and strains to which it is subjected in the human body. As a result, the discogram of July, 1992, indicated that the locking screw on the right at the L5 pedicle was disrupted and migrated proximally, suggesting an unlocking of the entire proximal system. Unfortunately, no further x-rays appear to have been taken of this particular phenomena and as a result, it is impossible to tell at this time, whether the metal has migrated further or whether it is remaining in position. Clearly, if it does migrate and even the presence of some migration at that time in 1992, suggests it should be removed so it does not migrate into a critical area.

(Mitchell Report at 3.) There is no evidence that Driggers ever had the screw removed.

On October 23, 1995, Driggers and his former wife, Margie Ann, filed their original complaint. Plaintiffs filed an amended complaint on October 29, 1996 [Doc. # 21]. This case has been remanded back to this Court from MDL Number 1014 proceedings before Judge Louis Bechtle in Philadelphia. All necessary discovery on liability in this case has concluded, including expert discovery. *See In re Orthopedic Bonescrew Prods. Liability Litig.,* MDL No. 1014, 1997 WL 688805, slip op. at 3–4 (E.D.Pa. Oct. 21, 1997) (PTO No. 1120); *id.* slip op. at 2, 1997 WL 857174 (E.D.Pa. Dec.15, 1997) (PTO No. 1201).

II.

■ Driggers' first cause of action for fraudulent marketing and promotion alleges that Sofamor's representations to surgeons and patients that the CD system was safe and effective was misleading in that Sofamor failed to disclose that the FDA had refused to clear the CD system for use in the pedicles; that there was no valid scientific evidence demonstrating its safety and efficacy; that pedicle screw fixation was to be done only in accordance with the Investigational Device Exemption provisions of the Food Drug and Cosmetic Act; or that the surgeon-promoters had a significant financial relationship with Sofamor.

This cause of action for fraud is barred by the three-year statute of limitations set forth in N.C.Gen.Stat. § 1–52(9), which states that "the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." The limitations period begins to run when the plaintiff discovered or should have discovered, in the exercise of reasonable care, the facts constituting the fraud. *See Hiatt v. Burlington Indus., Inc.,* 55 N.C.App. 523, 526, 286 S.E.2d 566, 568, *disc. rev. denied,* 305 N.C. 395, 290 S.E.2d 365 (1982). If the evidence is not conclusive or is conflicting, the question of when the plaintiff should have discovered the facts constituting the fraud is one for the jury. *Id.* "Failure of plaintiff, however, to exercise due diligence in discovering fraud can be determined as a matter of law where it is clear that there

was both capacity and opportunity to discover the fraud." *Id.*

Here, the evidence is clear that Driggers had the capacity and opportunity to discover the fraud, at the latest, in December 1989. Driggers indicated that he suffered from severe pain immediately after the surgery in 1986 (Driggers Dep. at 62) and suspected as early as 1987 or 1988 that the CD system was causing his pain. (*Id.* at 65–66). In 1989, Dr. Beaver took x-rays of Driggers' back and informed him that something in the hardware had broken. (*Id.* at 65). In December 1989, Driggers consulted with Dr. Beaver about "whether or not some of the persistent pain that he was having in his lower back related to the internal fixation device . . . and whether or not there was a potential necessity for removing the plate and screws from the lumbar spine." (Beaver Dep. at 28). Thus, at the latest, the limitations period began to run in December 1989. Since Driggers did not file his original complaint until October 23, 1995, his fraud claim is barred.

■ Even if Driggers' fraud claim had not been time-barred, it fails because Driggers has failed to show causation. "The essential elements of fraud are: '(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.' " *Rowan County Bd. of Educ. v. United States Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992) (citation omitted); *see also Whitlock v. Duke Univ.*, 637 F.Supp. 1463, 1468 (M.D.N.C.1986). Thus, to recover under a claim for misrepresentation, Driggers must show that he relied on the misrepresentation and that the misrepresentation caused him harm. *See Bryant v. Eagan*, 88 N.C.App. 741, 745, 364 S.E.2d

704, 706 (1988) (affirming summary judgment where the "plaintiffs have shown no evidence of any injury resulting from the alleged representations" and "where the damages alleged are at best speculative"). Driggers can not succeed on this claim since he can not show that he incurred harm from the CD system itself.[1]

In prior cases similar to this one, the Western and Eastern Districts of North Carolina have granted summary judgment based on the plaintiff's inability to present expert testimony on the issue of causation. *See Hill v. Danek Medical, Inc.*, No. 4:96CV177–H1 (E.D.N.C. Sept. 10, 1998); *Kirkman v. Sofamor, S.N.C.*, No. 1:98CV100, 1998 WL 666706 (W.D.N.C. July 21, 1998); *Hensley v. Danek Medical, Inc.*, 32 F.Supp.2d 345 (W.D.N.C.1998).

■ Here, Driggers has failed to produce expert evidence that the CD system was the cause of his pain. In 1997, Dr. Ohl advised Driggers that the screw had migrated in his back and should be explanted. (Driggers Dep. at 70–73.) Dr. Mitchell also concluded that the loosened screw should be explanted to prevent further migration. (Mitchell Report at 3). However, this evidence does not show that the migrated screw caused Driggers' pain or injury, particularly where other factors could have caused the pain. Driggers underwent five surgical procedures before the 1986 surgery involving the CD system. Furthermore, in the spring of 1990, Driggers was involved in a second auto accident which could have contributed to the pain in his back.

■ Driggers argues that the issue of causation should be left to the jury. However, where the injury is complicated, such as a back injury, expert medical testimony on the issue of causation must be provided

---

1. Driggers has also failed to show reliance where he was unaware prior to surgery that the CD system would be implanted in his spine, and therefore did not make the decision whether or not to use the system. (Driggers Dep. at 62–64.) Furthermore, his sur-

geon, Dr. Urbaniak was fully aware of the risks of the device (Urbaniak Dep. at 48, 78), and stated that in deciding whether to use instruments, "there's never been any consideration whether they are approved [by the FDA] or not." (*Id.* at 91).

to support a jury award. *Click v. Pilot Freight Carriers, Inc.,* 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). "[W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Id.* (citations omitted).

"[W]hether there is sufficient evidence to create a jury issue of those essential substantive elements of the action, as defined by state law, is controlled by federal rules." *Fitzgerald v. Manning,* 679 F.2d 341, 346 (4th Cir.1982) (citations omitted). The evidence must be fact-specific and not merely speculative. "[I]n order to qualify on causation, the opinion testimony of the medical expert may not be stated in general terms but must be stated in terms of a 'reasonable degree of medical certainty.'" *Id.* at 350 (citations omitted).

Where several factors could have caused an injury, a plaintiff "'must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.'" *Id.* at 348 (quoting Prosser, Torts, 245 (3d ed.1964)). "To defeat a motion for directed verdict and take the question of causation to the jury, non-movant's evidence 'must indicate a reasonable scientific probability that the stated cause produced the stated result....' When 'evidence raises a mere conjecture, surmise and speculation as to [causation],' it is insufficient to present a question of causation to the jury.'" *Hinson v. National Starch & Chem. Corp.,* 99 N.C.App. 198, 202, 392 S.E.2d 657, 659

(1990) (citations omitted); *see also Kirkman v. Sofamor, S.N.C.,* No. 1:98CV100, 1998 WL 666706 at *4 (W.D.N.C. July 21, 1998) (holding that plaintiff failed to show causation where expert presented "no evidence beyond mere conjecture that, in this case, the breakthrough of the pedicle by the screw was caused by any specific defect in the hardware, and not one of the other causes"). Since Driggers' expert failed to rule out other possible causes of Driggers' pain and failed to show how the CD system caused the pain, summary judgment is proper.

### III.

■ The statute of limitations for a negligent misrepresentation claim is also three years from the date of discovery. *See* N.C.Gen.Stat. § 1–52(5); *Barger v. McCoy Hillard & Parks,* 122 N.C.App. 391, 393, 469 S.E.2d 593, 594 (1996), *aff'd,* 346 N.C. 650, 488 S.E.2d 215 (1997); *Jefferson–Pilot Life Ins. Co. v. Spencer,* 336 N.C. 49, 57, 442 S.E.2d 316, 320 (1994). Since, the limitations period began to run in 1989 when Driggers should have discovered the facts surrounding his claim, this claim is also time-barred.

Even if the claim was not time-barred, it would be dismissed based on Driggers' failure to establish causation. *See Stanford v. Owens,* 46 N.C.App. 388, 395, 265 S.E.2d 617, 622 (1980) (holding that a claim for negligent misrepresentation will only survive if there is a showing that such negligence is the proximate cause of the injury). To survive summary judgment, Driggers must show that the misrepresentations about the CD system caused the injury to his back. Since Driggers has failed to produce expert evidence that the CD system itself caused his pain, summary judgment on his negligent misrepresentation claim is granted.[2] *See Jefferson–Pilot Life Ins. Co.,* 336 N.C. at 55, 442 S.E.2d at 319.

---

**2.** As mentioned earlier regarding the fraud claim, Driggers has also failed to show reliance where he did not know that the CD

system had been implanted until after the surgery and the evidence shows that Dr. Urbaniak knew of the risks prior to surgery.

## IV.

■ Driggers' strict liability claim fails as a matter of law. "North Carolina does not recognize strict liability in products liability actions." *Holley v. Burroughs Wellcome Co.*, 74 N.C.App. 736, 742, 330 S.E.2d 228, 232 (1985), *aff'd*, 318 N.C. 352, 348 S.E.2d 772 (1986); *see e.g. Smith v. Cessna Aircraft Co.*, 571 F.Supp. 433, 436 (M.D.N.C.1983); *Foyle v. Lederle Labs.*, 674 F.Supp. 530, 535 (E.D.N.C.1987).

## V.

■ Driggers' claim that Sofamor was negligent in designing, marketing, and testing the CD device is also barred by the statute of limitations.[3] The statute of limitations for a personal injury claim sounding in negligence is three years under N.C.Gen.Stat. § 1–52(5). *See Wilson v. McLeod Oil Co.*, 327 N.C. 491, 512, 398 S.E.2d 586, 596 (1990). The cause of action accrues when "bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs." N.C.Gen. Stat. § 1–52(16). Thus, Driggers' negligence claim accrued at the latest in December 1989 when Driggers saw Dr. Beaver and was informed that the CD system may have broken. Since Driggers failed to file his complaint within three years of that date, summary judgment is appropriate on the negligence claim.

■ Even if the claim was not time-barred, it would fail since Driggers has failed to produce evidence of causation.

"The essential elements of a products liability action are: '(1) evidence of a standard of care owed by the reasonably prudent person in similar circumstances; (2) breach of that standard of care; (3) injury caused directly or proximately by the breach, and; (4) loss because of the injury.' ... In addition, a plaintiff must present evidence the product was in a defective condition at the time it left the defendant's control." *Nicholson v. American Safety Util. Corp.*, 124 N.C.App. 59, 64–65, 476 S.E.2d 672, 676 (1996), *aff'd as modified*, 346 N.C. 767, 488 S.E.2d 240 (1997) (citations omitted); *see also Fender v. Sofamor, S.N.C.*, No. 1:98CV100, Memorandum and Order at 6 (W.D.N.C. July 21, 1998). Since Driggers has failed to show that a breach caused his injury, summary judgment on this claim must be granted.

## VI.

■ The statute of limitations for a negligence per se claim is also three years from the date the alleged harm became or should have become apparent. *See* N.C.Gen.Stat. § 1–52(5)(16); *Cage v. Colonial Bldg. Co.*, 111 N.C.App. 828, 833, 433 S.E.2d 827, 830 (1993), *rev'd on other grounds*, 337 N.C. 682, 448 S.E.2d 115 (1994). Thus, this claim is also time-barred and summary judgment must be granted. Furthermore, this claim also fails because Driggers is unable to show causation. *See Bell v. Page*, 271 N.C. 396, 399, 156 S.E.2d 711, 714 (1967) (liability under a negligence per se claim requires a showing of causation); *Federated Mut.*

---

**3.** Defendants also argue that this cause of action is barred by North Carolina's six-year statute of repose which states that "[n]o action for the recovery of damages for personal injury ... based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption." N.C.Gen.Stat. § 1–50(6). Here, the "initial purchase" of the CD system occurred no later than November 24, 1986, when the instrumentation was used in Driggers' surgery, and Plaintiffs filed their original complaint almost nine years later on October 23, 1995. However, *Wilder v. Amatex Corp.*, 314 N.C. 550, 557, 336 S.E.2d 66, 70 (1985), set forth an exception to section 1–50(6) for latent diseases which "normally develop over long periods of time." *Id.* (holding that asbestosis was a disease for purposes of disease exception); *see also Bullard v. Dalkon Shield Claimants Trust*, 74 F.3d 531, 535 (4th Cir. 1996) (holding that pelvic inflammatory disease caused by intrauterine device was a disease for purposes of disease exception). As summary judgment is granted for all claims based on other grounds, this Court refrains from deciding this issue.

*Ins. Co. v. Hardin,* 67 N.C.App. 487, 489, 313 S.E.2d 801, 802 (1984) (same).

## VII.

 The statute of limitations for breach of implied warranty claims where bodily injury to the plaintiff is an essential element of the claim is the three-year period contained in N.C.Gen.Stat. § 1–52(1). *See Smith v. Cessna Aircraft Co.,* 571 F.Supp. 433, 436–37 (M.D.N.C.1983). Thus, Driggers' breach of implied warranty claims are also time-barred.

 Even if the claims were still timely, they also fail absent a showing of causation. In order to prevail on his claim for breach of implied warranty of merchantability, Driggers must present evidence that "(1) the goods bought and sold were subject to an implied warranty of merchantability, (2) the goods were defective at the time of the sale, (3) the defective nature of the goods caused plaintiff's injury, and (4) damages were suffered as a result." *Goodman v. Wenco Foods, Inc.,* 333 N.C. 1, 21–22, 423 S.E.2d 444, 454 (1992) (citation omitted); *see also Fender v. Sofamor,* No. 98CV100, Memorandum and Order at 9 (W.D.N.C., Thornburg, J., July 21, 1998). Since Driggers has failed to produce any evidence that the CD device caused his injury, summary judgment on this claim is granted.

## VIII.

As summary judgment will be granted to Sofamor on all substantive claims, Driggers' derivative claim of loss of consortium is dismissed as well. *See Stokes v. Southeast Hotel Properties, Ltd.,* 877 F.Supp. 986, 1000–1001 (W.D.N.C.1994).

## IX.

For the reasons stated above, Defendants' Motion for Summary Judgment on all claims is GRANTED. As no claims remain, this case will be DISMISSED. Defendants' Motion to Exclude Testimony of Dr. William Mitchell [Doc. # 58] and Motion to Preclude or Limit Evidence [Doc. # 56] are DENIED AS MOOT.