**Wanda SMITH, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. 2:03CV00147.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

June 29, 2005.

Andrew E. Carpenter, Simon Delano Roberts Moore, Charles H. Smith, III, Gentry Locke Rakes & Moore LLP, Roanoke, VA, Clarence E. Phillips, Castlewood, VA, for Plaintiff.

Brian K. Telfair, Robert L. Wise, Bowman and Brooke LLP, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This case was referred pursuant to 28 U.S.C. § 636(b)(1)(B) (West Supp.2005) to the Honorable Pamela Meade Sargent, United States Magistrate Judge. This matter is before the court on objections to the Report and Recommendations of Magistrate Judge Sargent filed by the plaintiff, Wanda Smith, ("Smith"), and the defendant, General Motors Corporation, ("GM"), (Docket Items Nos. 67, 68). The court heard oral argument in a hearing in chambers on April 26, 2005. Accordingly, the court will adopt the Report and Recommendation of Magistrate Judge Sargent, (Docket Item No. 64), ("Report and Recommendation"), will grant summary judgment in favor of GM and will dismiss the case.

### I. Background

Smith has sued GM claiming that she sustained personal injuries in a multi-vehicle car accident due to a defective seat belt safety restraint system in a 2001 Chevrolet Cavalier.[1] Pretrial motions by GM were heard by Magistrate Judge Sargent. These motions were: Motion for Summary Judgment, (Docket Item No. 32), Motion In Limine To Exclude Various Irrelevant Evidence, (Docket Item No. 34), Motion In Limine To Limit Plaintiff's Expert To The

---

1. A full discussion of the facts of this case can be found in Magistrate Judge Sargent's Report and Recommendation. Since the mate-rial facts are not in dispute, the court will refer to the Magistrate Judge's Report and Recommendation for the facts.

Opinions Disclosed In His Rule 26(a)(2)(B) Report, (Docket Item No. 36), Motion In Limine To Exclude The Medical Causation Opinion Testimony Of Plaintiff's Surgeon Robert H. Blanton, M.D., (Docket Item No. 38), Motion In Limine To Exclude The Testimony Of Plaintiff's Expert Witness Charles Benedict, (Docket Item No. 40), and Motion In Limine To Exclude The Medical Injury Causation Opinion Testimony Of Plaintiff's Nephrologist Douglass W. Green, M.D., (Docket Item No. 43). On March 24, 2005, Magistrate Judge Sargent filed her Report and Recommendation, (Docket Item No. 64). Magistrate Judge Sargent recommended that this court deny GM's motions in limine to exclude the expert opinions of Smith's treating physicians, (Docket Items Nos. 38 and 43), grant GM's Motion to limit Charles E. Benedict, Ph.D., ("Benedict"), Smith's engineering expert, to the opinions disclosed in his Rule 26(a)(2)(B) report, (Docket Item No. 36), grant GM's motion in limine to exclude the expert opinions of Benedict only insofar as to exclude any opinions as to medical causation, (Docket Item No. 40), and grant GM's motion for summary judgment, (Docket Item No. 32). (Report and Recommendation at 18.)

GM and Smith both filed objections to the Report and Recommendation, (Docket Items Nos. 67, 68, 70), and a hearing was held on those objections in front of this court on April 26, 2005. The court, having been fully briefed and having held oral argument on this matter, now issues the following memorandum opinion and order.

## II. Analysis

A report and recommendation by a magistrate judge is reviewed *de novo* by this court. 28 U.S.C.A. § 636(b)(1)(C) (West Supp.2005). Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ...." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must consider the factual evidence and all inferences to be drawn therefrom. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The evidence is construed in the light most favorable to the nonmoving party, and the court must draw all reasonable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court may not make credibility determinations or weigh the evidence, and the court must disregard all evidence favorable to the moving party that it is not required to believe. *Reeves*, 530 U.S. at 150–51, 120 S.Ct. 2097. Thus, if there is no genuine issue of material fact, summary judgment is appropriate.

GM objects to the Report and Recommendation, arguing that Benedict "should not be allowed to render any expert opinion at trial in this matter." ( [GM's] Objection to Magistrate's Report and Recommendation, (Docket Item No. 67), at 1.) GM relies on its arguments contained in its Brief in Support of GM's Motion in Limine to Exclude the Testimony of Plaintiff's Expert Witness Charles Benedict (Docket Item No. 41.) Smith objects to the Report and Recommendation based on the following three arguments: (1) Smith argues that the recommendation to grant GM's motion to limit Benedict to the opinions disclosed in his Rule 26(a)(2)(b) report as unopposed is in error because Smith actually did oppose GM's motion; (2) Smith argues that the Report and Recommendation erroneously concluded that "medical testimony" is required to establish proximate cause; and (3) Smith argues that the Report and Recommendation erroneously resolved disputed questions of fact in favor

of the defendant. (Plaintiff's Objections to the Report and Recommendations of Magistrate Judge Sargent, ("Plaintiff's Objections"), (Docket Item No. 68), at 2.) GM argues that Smith did not oppose its motion to limit Benedict to the opinions disclosed in his Rule 26(a)(2)(B) report, that the Report and Recommendation accurately reflected Smith's burden to produce expert medical testimony to establish proximate cause, and that Magistrate Judge Sargent did not resolve disputed factual issues in favor of GM. (Response to Plaintiff's Objections to the Report and Recommendations of Magistrate Judge Sargent, ("Defendant's Response"), at 2, 4, and 12.)

Smith initially argues that she did, in fact, oppose GM's motion to limit Benedict to the opinions disclosed in his Rule 26(a)(2)(B) Report. (Plaintiff's Objections at 3–4.) Smith contends that her Memorandum in Opposition to GM's Motion in Limine to Exclude the Testimony of Plaintiff's Expert Witness Charles Benedict, (Docket Item No. 54), contained an argument that Benedict's testimony should not be limited. (Plaintiff's Objections at 3.) However, Smith's motion referenced GM's motion to exclude Benedict's testimony, (Docket Item No. 40), not GM's motion to limit Benedict to the opinions disclosed in his Rule 26(a)(2)(B) Report, (Docket Item No. 36). Read in the context of Smith's brief and its reference to GM's motion to exclude Benedict's testimony, her argument that the brief also applied to GM's motion to limit Benedict's testimony to the opinions disclosed in his Rule 26(a)(2)(B) Report is untenable due to the absence of any reference to that motion. Thus, the Magistrate Judge's Report and Recommendation will be adopted on this issue, and GM's motion will be granted as unopposed.

Smith's next objection to the Report and Recommendation is that Magistrate Judge Sargent incorrectly required expert medical testimony on the causation of Smith's injuries. (Plaintiff's Objections at 4.) In her opinion, Magistrate Judge Sargent held that, "[i]n a case such as this one, where Smith suffered complex internal injuries, Tennessee law requires a plaintiff to produce expert medical testimony to establish the causal connection between the alleged defect and the plaintiff's injuries." (Report and Recommendation at 13.) Since Smith provided no expert medical testimony on the issue of causation, Magistrate Judge Sargent recommended summary judgment be granted in favor of GM. (Report and Recommendation at 14.)

Notwithstanding Smith's arguments to the contrary, the report and recommendation contains an accurate statement of Tennessee law.

The issue of causation can be viewed in two parts, general causation and specific causation. General causation is established by demonstrating that exposure to the substance at issue can cause the disorder at issue, whereas specific causation is establishing that the exposure suffered by plaintiff is the actual cause of plaintiff's disorder. Often, general causation is established by epidemiological evidence such as is found in scientific and medical literature, while a treating physician may offer testimony about the specific causation of the plaintiff's condition based on a differential diagnosis.

JACK B. WEINSTEIN ET AL., WEINSTEIN'S FEDERAL EVIDENCE § 702.06 (2d ed.2005). Modern case law requires expert medical testimony to establish causation in cases where the plaintiff has suffered a complex injury. This is the clearly established case law in Tennessee. The Supreme Court of Tennessee has held that "[m]edical causation and permanency of an injury must be established in most cases by expert medical testimony." *Thomas v. Aetna Life &*

*Casualty Co.,* 812 S.W.2d 278, 283 (Tenn. 1991). *Thomas* has been cited by numerous Tennessee appellate court cases for this proposition. *See Conner Bros. Excavating Co., Inc. v. Long,* 98 S.W.3d 656, 660 (Tenn.2003) ("Typically, causation [of an injury] is established through expert medical testimony."); *Whirlpool Corp. v. Nakhoneinh,* 69 S.W.3d 164, 168 (Tenn. 2002) ("Except in the most obvious cases, causation may only be established through expert medical testimony."); *Hankins v. Chevco, Inc.,* 90 S.W.3d 254, 260 (Tenn.Ct. App.2002) (quoting *Thomas* ); *Miller v. Choo Choo Partners, L.P.,* 73 S.W.3d 897, 901 (Tenn.Ct.App.2001) ("As a general rule, the causation of a medical condition must be established by testimony from a medical expert."). Furthermore, this is also the law in most other states.

> Where the subject matter of the case is of a high degree of scientific complexity, proof of causation must be by expert testimony. It is permissible for a plaintiff to make a prima facie case based upon an inference from the plaintiff's competent evidence if such a finding relates to a matter which is within a lay person's scope of knowledge. However, if the matter in issue is one within the knowledge of experts only, and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert testimony in order to establish a prima facie case.

63 AM. JUR. 2D *Products Liability* § 62 (2005).

Due to the accident giving rise to this litigation, Smith suffered a tear to her mesentery, which required surgery to repair and to remove a 14–centimeter section of her small bowel. During surgery, she required mechanical ventilation due to respiratory failure and suffered kidney failure as a result of dehydration brought on by the bowel injury. Expert medical testimony is necessary in this case due to the complex nature of the injury alleged to

have been caused by GM's allegedly defective restraining system. Smith has not provided any expert medical testimony that the alleged defective restraining system caused her injuries. While she argues that "seatbelts are not used exclusively by physicians[ ] so it does not require the testimony of a physician to establish the defectiveness of the seatbelt in its intended use," an expert is clearly required to establish that the defect that Smith alleges caused the injuries that she suffered.

Smith also argues that she has submitted evidence of a defective seatbelt, evidence that the seatbelt allowed her to "submarine" under the seatbelt during the collision, and that "[b]ecause of the defect, according to Dr. Benedict the belt was then in a position on Smith's abdomen where it caused the seatbelt injury complained of." (Plaintiff's Objections at 8.) However, Benedict is not a medical doctor; he is an engineer. Furthermore, Benedict himself stated that "I am not offering *any* medical opinions . . . ." (Benedict Affidavit at 20.) Thus, Benedict's opinions on the cause of Smith's injuries are not sufficient to meet Smith's burden to prove causation.

. While Smith contends that "there is ample evidence in the record that the injury would not occur but for the defect alleged by the plaintiff," this is not the case. GM's expert, Dr. Banks, testified that Smith's bands of bruising, in particular the location of the upper band of bruising, was consistent with the torso belt being improperly placed under Smith's right arm rather than over her shoulder since, after the accident, Smith had no abrasions on her shoulder or her arm, but did have an abrasion leading up underneath her right breast and the fact that the upper band of contusions extended into the area below Smith's right armpit. (Banks Deposition at 104–05.) Dr. Banks concluded that the tear to Smith's mesentery was inconsistent

with a submarining type event, and that Smith's injuries would not have happened if Smith had placed the torso belt over her shoulder as opposed to under her arm. (Banks Deposition at 110–11.) This medical expert testimony has not been rebutted by any expert testimony by Smith. As noted above, Smith is required to present expert medical testimony on causation in this case due to the complex nature of her injury. She has not done so.

Finally, Smith argues that Magistrate Judge Sargent resolved disputed questions of fact in favor of GM. Specifically, she argues that Magistrate Judge Sargent erred in "favor[ing] the testimony of defense expert Dr. Banks over that of Dr. Benedict in considering their opinions as to the manner in which the plaintiff was wearing her seatbelt at the time of collision." (Plaintiff's Objections at 13.) However, as noted above, Smith has presented no medical expert testimony that her injury was caused by the defective restraining system she alleges. There is no question of disputed fact on this issue—Smith has failed to provide any evidence on this issue. It is on this ground that the court will grant summary judgment.

### III. Conclusion

For the reasons discussed above, the court finds that Smith has failed to establish a genuine issue of material fact with respect to her failure to produce expert medical testimony on the issue of proximate cause of her injuries. Therefore, the court will adopt Magistrate Judge Sargent's Report and Recommendation and DENY GM's motions in limine to exclude the expert opinions of Smith's treating physicians, GRANT GM's Motion to limit Benedict to the opinions disclosed in his Rule 26(a)(2)(B) report, GRANT GM's motion in limine to exclude the expert opinions of Benedict only insofar as to exclude any opinions as to medical causation, and GRANT GM's motion for summary judgment.

The Clerk is directed to send certified copies of this Order to all counsel of record. A final order will be entered in accordance with this opinion.

### ORDER

This case was referred pursuant to 28 U.S.C. § 636(b)(1)(B) to the Honorable Pamela Meade Sargent, United States Magistrate Judge. The magistrate judge filed a report recommending that this court deny General Motors Corporation's, ("GM"), motions in limine to exclude the expert opinions of Smith's treating physicians, (Docket Items Nos. 38 and 43), grant GM's Motion to limit Charles E. Benedict, Ph.D., ("Benedict"), Smith's engineering expert, to the opinions disclosed in his Rule 26(a)(2)(B) report, (Docket Item No. 36), grant GM's motion in limine to exclude the expert opinions of Benedict only insofar as to exclude any opinions as to medical causation, (Docket Item No. 40), and grant GM's motion for summary judgment, (Docket Item No. 32). (Report and Recommendation at 18.) Objections to the Report and Recommendation have been filed, and this court, after oral argument and upon de novo review of the record, is of the opinion that the magistrate judge's report and recommendation shall be adopted. It is accordingly,

### ADJUDGED AND ORDERED

that GM's motions to exclude the expert opinions of Smith's treating physicians, (Docket Items Nos. 38 and 43) are DENIED; GM's motion to limit Benedict to the opinions disclosed in his Rule 26(a)(2)(B) report, (Docket Item No. 36), is GRANTED; GM's motion in limine to exclude the expert opinions of Benedict to exclude any opinions as to medical causation, (Docket Item No. 40), is GRANTED;

and GM's motion for summary judgment, (Docket Item No. 32), is **GRANTED**. Final judgment is granted to the defendants, and this case is stricken from the docket.

The Clerk is ordered to forward a copy of this order and the accompanying memorandum opinion to all counsel of record.

### REPORT AND RECOMMENDATION

SARGENT, United States Magistrate Judge.

The plaintiff, Wanda Smith, ("Smith"), has filed suit against General Motors Corporation, ("GM"), seeking damages for personal injuries she alleges that she suffered as a result of a defective seat belt safety restraint system in a 2001 Chevrolet Cavalier. Smith's complaint includes claims for negligent design, negligent manufacture, failure to warn and breach of warranty. (Docket Item No. 1.) This matter is before the court on the following pretrial motions filed by GM: Motion For Summary Judgment, (Docket Item No. 32), Motion In Limine To Exclude Various Irrelevant Evidence, (Docket Item No. 34), Motion In Limine To Limit Plaintiff's Expert To The Opinions Disclosed In His Rule 26(a)(2)(B) Report, (Docket Item No. 36), Motion In Limine To Exclude The Medical Causation Opinion Testimony Of Plaintiff's Surgeon Robert H. Blanton, M.D., (Docket Item No. 38), Motion In Limine To Exclude The Testimony Of Plaintiff's Expert Witness Charles Benedict, (Docket Item No. 40), and Motion In Limine To Exclude The Medical Injury Causation Opinion Testimony Of Plaintiff's Nephrologist Douglass W. Green, M.D., (Docket Item No. 43). The court's jurisdiction is based upon diversity of citizenship. See 28 U.S.C.A. § 1332 (West 1993 & Supp.2004). These motions are before the undersigned magistrate judge by referral pursuant to 28 U.S.C.A. § 636(b)(1)(B).

Smith's counsel has filed memoranda in opposition to each of GM's motions, except for one—GM's Motion In Limine To Limit Plaintiff's Expert To The Opinions Disclosed In His Rule 26(a)(2)(B) Report, (Docket Item No. 36). Since no response in opposition to this motion has been filed, the undersigned will assume that this motion is unopposed by Smith and will recommend that this motion be granted as unopposed.

The undersigned has reviewed GM's motions and Smith's responses in opposition to each of these motions. In addition, counsel for both parties appeared before the undersigned and presented oral argument on these motions on March 14, 2005. Thus, these matters are ripe for decision and the undersigned now submits the following report and recommended disposition.

#### I. Facts

Many of the facts surrounding Smith's accident and the injuries she sustained in the accident are not disputed. On Friday, April 26, 2002, Smith was the right front seat passenger in her 2001 Chevrolet Cavalier driven by her husband, James Smith, when the Smiths were involved in a multiple-vehicle, multiple-impact crash in Mountain City, Tennessee. While traveling approximately 40 miles per hour, Smith's Cavalier, which was manufactured by GM, collided with a Ford Grenada. That impact drove the Cavalier to its right and directly into the front of an 8,000-pound Ford truck.

It is undisputed that there were two impacts during the collision and that the Cavalier's passenger side airbag deployed during the first impact. It also is undisputed that the second collision involved an "under-ride" component, meaning that the front end of Smith's Cavalier was forced downward and the rear upward, vertically.

Immediately after the crash, Smith went to Johnson County Health Center and, later that day, to Bristol Regional Medical Center Emergency Room. She was discharged home from both facilities. The following Monday, Smith returned to Bristol Regional Medical Center complaining of pain. At that time, it was discovered that Smith had a tear to her mesentery.[1] Smith then had surgery to repair the tear and to remove a 14–centimeter section of her small bowel, which was damaged as a result of the tear to her mesentery. During surgery, Smith suffered respiratory failure and required mechanical ventilation. Smith also suffered acute kidney failure as a result of dehydration brought on by the bowel injury.

In her complaint, Smith alleges that she was injured when her seatbelt "did not properly restrain [her] during the collision." She further alleges that the seatbelt was defective for its failure "to remain on and restrain [her] pelvic area during the collision...." Smith, through her own deposition testimony, has presented evidence that she was properly wearing the seatbelt at the time of the collision. In particular, Smith has testified that, at the time of the accident, she was wearing the torso belt properly over the top of her right shoulder and the lap belt across her hips just below her navel. (Docket Item No. 48, Attachment No. 1, ("Smith Deposition"), at 67, 71, 76–77.)

The two primary issues presented to the court through GM's various pending motions is whether Smith has presented sufficient competent evidence of a defect in the seatbelt and sufficient competent evidence

that this alleged defect in the seatbelt caused the injuries for which she seeks recovery.[2]

The parties have provided the court with affidavits and deposition testimony of a number of proffered expert witnesses for review in consideration of GM's motions. Particularly relevant to these motions, are the deposition testimony of Smith's treating surgeon, Dr. Robert H. Blanton, M.D., her treating nephrologist, Dr. Douglass Greene, M.D., plaintiff's engineering expert Charles E. Benedict, Ph.D., and defense expert Dr. Robert Banks, M.D., Ph. D., who is. a physician, as well as an accident reconstructionist.

In response to GM's motions, Smith's counsel has filed an affidavit from Benedict, along with numerous exhibits to this affidavit. According to Benedict, the seatbelt restraining Smith at the time of this accident was defective and unreasonably dangerous. In his Rule 26 expert report provided to GM's counsel, Benedict opined:

> The restraint system for the right front occupant is inherently defective and unreasonably dangerous because the retractor failed to lock up properly and allowed the webbing to spool out which allowed Ms. Smith to submarine under the lap belt.

(Docket Item No. 33, Attachment No. 11, ("Benedict Report"), at 3.) Benedict is of the opinion that the seatbelt improperly "spooled out" immediately after the first impact and "overrode [Smith's] abdominal area and up into the top part of her abdomen and into the lower rib area which is the location of the mesentery." (Docket

---

1. The mesentery is "a double layer of peritoneum attached to the abdominal wall and enclosing in its fold a portion or all of the abdominal viscera, conveying to it its vessels and nerves." STEDMAN'S MEDICAL DICTIONARY at 1096 (27th ed.2000).

2. While Smith also sustained injuries to one of her ankles and both of her knees in this accident, it appears that Smith's claims in this case are based solely on her internal injuries, which she claims were caused by an alleged defect in the Cavalier's seatbelt restraint system.

Item No. 52, Attachment Nos. 3, 4 and 5, ("Benedict Deposition"), at 93.) Benedict is further of the opinion that alternative, safer designs for the seatbelt system included the use of a "pre-tensioner," a device designed to take slack or looseness out of a belt upon collision or an "all belts to seats," ("ABTS"), system in which the seatbelts attach to the seat itself rather than the vehicle body. (Benedict Report at 3.)

It is important to note that Smith's counsel do not offer Benedict as being qualified to render medical opinions. Furthermore, Benedict, himself stated in his affidavit that "I am not offering any medical opinions...." (Docket Item No. 51, Attachment No. 1, ("Benedict Affidavit"), at 20.)

The medical evidence regarding the causation of Smith's injuries includes the opinions of Smith's treating physicians, Drs. Green and Blanton, as well as the opinions of the defense expert Dr. Banks. According to Dr. Green, Smith's injuries were "consistent" with other cases of seatbelt injuries he has encountered during his medical practice. (Docket Item No. 48, Attachment No. 11, ("Green Deposition"), at 28–29.) Dr. Green also has testified that it was his opinion to a reasonable degree of medical certainty that Smith's injury was a "seat belt type injury." (Green Deposition at 29.) Dr. Blanton testified that hollow organ injuries, such as the injury suffered by Smith, are "the most common kind of injury you see from a seat belt injury." (Docket Item No. 48, Attachment No. 12, ("Blanton Deposition"), at 13.)

The parties agree that pictures of Smith taken after the accident show three separate "bands" of bruising or contusions on her abdomen. These have been referred to by the parties and various witnesses as an upper band, a middle band and a lower or inferior band. Neither Dr. Green nor Dr. Blanton has offered any opinion as to whether Smith's internal injuries were caused by the specific trauma which caused any particular one of these bands of contusions or whether Smith's internal injuries were caused by the first or second impact.

The defense expert, Dr. Banks, has testified that he could not determine whether Smith's injury to her ankle occurred in the first or second impact. (Docket Item Nos. 59 and 60, ("Banks Deposition"), at 40–41.) Dr. Banks also has stated that Smith's knees were likely injured in both impacts. (Banks Deposition at 41.) Dr. Banks has testified that these bands of bruising, and, in particular, the location of the upper band of bruising, is consistent with the torso belt being improperly placed under Smith's right arm rather than over her shoulder. (Banks Deposition at 104.) He based this opinion on the fact that, after the accident, Smith had no abrasions on her shoulder or her arm, but did have an abrasion leading up underneath her right breast and the fact that the upper band of contusions extended into the area below Smith's right armpit. (Banks Deposition at 104–05.)

Dr. Banks also has testified that, in his opinion, the upper and lower bands of bruising on Smith's abdomen were caused respectively by the torso and the lap belts in the first impact. (Banks Deposition at 43.) Dr. Banks further testified that he believed that additional contusions in the area of the lower band and the middle band of contusions were caused by the second impact. (Banks Deposition at 44.) In particular, Dr. Banks has testified that it was his opinion that the middle band of contusions was caused by "the torso belt which was placed under her arm relocated itself down into the area of that middle band and was in place at the area of the middle band when the second impact oc-

curred." (Banks Deposition at 45.) Dr. Banks also has testified that, in his opinion, the lap belt could not have caused the middle band of contusions on Smith because the pattern of the lap belt did not match the pattern of the middle contusion. (Banks Deposition at 108.) Dr. Banks stated that "[t]he orientation of the [lap] belt is completely different from the orientation of the middle bruise." (Banks Deposition at 109.)

Dr. Banks also testified that he believed that the tear to Smith mesentery was caused by the blow that caused the middle band of contusions in the second impact when "the forward abdominal wall was squeezed back against the spine and a segment of [the] bowel was trapped and the mesentery was trapped between the forward abdominal wall and the seat belt and the ... spine causing the injury." (Banks Deposition at 49–50.) Dr. Banks further testified that it was his opinion that the injuries sustained by Smith were inconsistent with a submarining type event. (Banks Deposition at 110.) Dr. Banks also testified that, in his opinion, the injuries Smith sustained would not have happened if Smith had placed the torso belt over her shoulder as opposed to under her arm. (Banks Deposition at 111.) Dr. Banks further testified that, in his opinion, the injury to Smith's mesenteric artery would not have occurred if the torso belt had been properly placed over her shoulder as opposed to under her arm. (Banks Deposition at 112.)

## II. Analysis

GM has moved for summary judgment based on a number of arguments. First, GM argues that Smith's claims are time-barred. Second, GM argues that Smith has failed to rebut the presumption that the Cavalier was not defective or unreasonably dangerous. Third, GM argues that Smith cannot prove that the seatbelt at issue was defective. Fourth, GM argues that Smith cannot prove that the alleged defective seatbelt was the proximate cause of her injuries. I will first address GM's argument that Smith's claims are time-barred. I will next address GM's argument that Smith cannot prove that the alleged defective seatbelt was the proximate cause of her injuries because my finding on this issue precludes the necessity of addressing the other issues raised.

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. See Anderson, 477 U.S. at 255, 106 S.Ct. 2505; Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. Therefore, in reviewing GM's motion for summary judgment in this case, the court must view the facts and inferences in the light most favorable to Smith. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or

that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington–South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir.1996). Moreover, Rule 56(c) requires a court to enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an essential element of that party's claim. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

There is no dispute in fact as to the date of the accident at issue or the date on which Smith filed suit. As stated above, Smith, a Virginia resident, was involved in the automobile accident at issue in this case in Tennessee on April 26, 2002. Smith thereafter filed this case against GM in this court on December 8, 2003, based on the court's diversity jurisdiction. *See* 28 U.S.C.A. § 1332 (West 1993 & Supp.2004). It is well-settled that federal courts sitting in diversity, as here, must apply the choice of law provisions of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Here, Virginia is the forum state. It further is well-settled in Virginia that the law of the place of the wrong or injury, in this case Tennessee, controls substantive issues, while the law of the forum, Virginia, controls procedural issues. *See Jones v. R.S. Jones & Assoc., Inc.*, 246 Va. 3, 431 S.E.2d 33, 34 (1993). Thus, the question is whether the statute of limitations is considered substantive or procedural.

In *Commonwealth of Virginia v. Owens–Corning Fiberglas Corp.*, 238 Va. 595, 385 S.E.2d 865, 867 (1989), the Supreme Court of Virginia distinguished among three types of statutes of limitations. The first is procedural or "pure" statutes of limitation, which are defined as serving merely to time restrict the assertion of a remedy. *See Owens–Corning*, 385 S.E.2d at 867. These statutes of limitation fur-

nish an affirmative defense and are waived if not pleaded. *See Owens–Corning*, 385 S.E.2d at 867. The second type is substantive or "special" statutes of limitation, which ordinarily are contained in statutes that create a new right and become elements of that newly created right, restricting its availability. *See Owens–Corning*, 385 S.E.2d at 867. Compliance with such a statute is a condition precedent to the maintenance of a claim. *See Owens–Corning*, 385 S.E.2d at 867. The third type of statute of limitation is a statute of repose. *See Owens–*, 385 S.E.2d 865*Corning*, 385 S.E.3d at 867. The time limitation for such statutes begins to run from some legislatively selected point in time unrelated to the accrual of any cause or right of action, whether accrued or yet to accrue. *See Owens–Corning*, 385 S.E.2d at 867. The parties do not contend that a statute of repose applies here. Thus, it must be determined whether the statute of limitations at issue here is a "pure" statute of limitations or a "special" statute of limitations.

GM argues that the Tennessee Products Liability Act, ("TPLA"), Tennessee Code Annotated § 29–28–101 *et seq.*, contains a one-year limitations period applicable to all products liability actions, and that this one-year limitations period is, therefore, a "special" substantive statute of limitations and should be applied to bar this case, which was filed on December 8, 2003, nearly one year and eight months after the accident on April 26, 2002. *See* TENN.CODE ANN. § 29–28–101 *et seq.* (Michie 2000 Repl.Vol.), Conversely, Smith argues that the TPLA does not contain its own statute of limitations nor does it create the right to pursue such an action. Thus, Smith contends that the Tennessee statute of limitations is procedural and, therefore, this court should apply the two-year Virginia statute of limitations for personal injury actions, found at Virginia Code Annotat-

ed § 8.01–243 (Michie 2000 Repl.Vol.).[3] For the following reasons, I agree with Smith's argument and find that her claims against GM are not time-barred.

GM argues that the TPLA contains a specific statute of limitation and is, therefore, substantive and must be applied in this case. According to Tennessee Code Annotated § 29–28–103(a), part of the TPLA, "[a]ny action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by § . . . 28–3–104. . . ." Moreover, Tennessee Code Annotated § 28–3–104, the general limitations provision for personal injury actions, provides as follows:

(a) The following actions shall be commenced within one (1) year after the cause of action accrued:

(1) Actions for libel, for *injuries to the person,* false imprisonment, malicious prosecution, breach of marriage promise; . . .

(emphasis added). Thus, it is clear that the TPLA itself does not contain a statute of limitations provision. Instead, it merely cross-references the Tennessee general limitations provision for personal injury actions.

Smith relies on *Sherley v. Lotz,* 200 Va. 173, 104 S.E.2d 795, 797 (1958), a wrongful death case in which the Supreme Court of Virginia concluded that the law of the forum, Virginia, applied because the applicable statute of limitations under the law of Tennessee, where the accident occurred, was a "general statute of limitation." Likewise, Smith further notes that in *Jones,* 431 S.E.2d at 36 (citing *Davis v. Mills,* 194 U.S. 451, 454, 24 S.Ct. 692, 48 L.Ed. 1067 (1904)), the Supreme Court of Virginia reaffirmed *Sherley,* noting that

"[i]n our opinion, the Tennessee [wrongful death] statute lacked the specificity that [the U.S. Supreme Court] propounds as the test for 'saying that [a limitation provision] qualified [a newly created] right.'"

That is precisely the case here. The TPLA refers to the Tennessee general statute of limitations provision for personal injury. That being the case, I agree with Smith in finding that the TPLA does not contain a specific "substantive" statute of limitations period and, therefore, that the two-year Virginia statute of limitation on claims for personal injuries should be applied in this case. Since the accident at issue in this case occurred on April 26, 2002, and Smith filed her complaint on December 8, 2003, I find that her action was timely filed, and I will recommend that the court deny GM's motion to enter judgment in its favor on this basis.

■ I will next address GM's argument that summary judgment should be entered in its favor based on Smith's failure to produce competent evidence that the alleged defective seatbelt was the proximate cause of her injuries. To prevail in a products liability case under Tennessee law, a plaintiff not only must show that a product was defective or unreasonably dangerous, but a plaintiff also must offer proof to establish that the defect or unreasonably dangerous condition was the cause of plaintiff's claimed injury. *See King v. Danek Med., Inc.,* 37 S.W.3d 429, 435 (Tenn.Ct.App.2000).

Proximate cause, of course, is a concept that was developed in the law of negligence. Its first requirement is that the defendant's act or, in [a] products liability case, the defect in the product, be a cause in fact of the injury. This means simply that the circumstances must be

---

**3.** Va.Code Ann § 8.01–243 provides a two-year statute of limitations period for every action for personal injuries, whatever the theory or recovery.

such that the injury would not have occurred but for the defect....

*Wyatt v. Winnebago Indus., Inc.*, 566 S.W.2d 276, 280 (Tenn.Ct.App.1977) (citations omitted).

Smith accurately argues that, under Tennessee law, the issue of proximate cause of an injury is a question for the jury, unless the determinative facts are undisputed. *See McGinniss v. Brown*, 30 Tenn.App. 178, 204 S.W.2d 334, 335 (1947). In a case such as this one, where Smith suffered complex internal injuries, Tennessee law requires a plaintiff to produce expert medical testimony to establish the causal connection between the alleged defect and the plaintiff's injuries. *See King*, 37 S.W.3d at 450 (citing *Driggers v. Sofamor, S.N.C.*, 44 F.Supp.2d 760, 764–65 (M.D.N.C.1998) ("... where the injury is complicated, ... expert medical testimony on the issue of causation must be provided to support a jury award")). Furthermore, to the extent that a plaintiff seeks damages for bodily injuries, Tennessee law requires a plaintiff to prove causation to a "reasonable medical certainty." *Md. Cas. Co. v. Young*, 211 Tenn. 1, 362 S.W.2d 241, 243 (1962). Also, while the Tennessee courts have interpreted proof by a reasonable medical certainty to require only that a plaintiff's injuries more likely than not were caused by a particular cause, a plaintiff's proof may not be speculative or conjectural. *See Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1201 (6th Cir.1988). In this case, I find that Smith has failed to produce any expert medical testimony establishing that the injuries she suffered were a result of the defect she alleges. Therefore, I recommend that summary judgment be entered in favor of GM on this issue.

It is important to note that in reaching this recommended ruling, I also am recommending that the court deny GM's motions in limine to exclude the medical causation opinion testimony of Smith's treating physicians, Drs. Blanton and Green, (Docket Item Nos. 38 and 43), but grant GM's motion in limine to limit the testimony of Smith's expert witness Benedict only insofar as he attempts to offer an opinion as to medical causation, (Docket Item No. 40). As noted above, Smith's counsel do not offer Benedict as being qualified to render medical opinions, and Benedict, himself, stated, "I am not offering *any* medical opinions...." (Benedict Affidavit at 20.)

I recommend that the court deny GM's motions in limine to exclude the medical causation opinion testimony of Smith's treating physicians, Drs. Blanton and Green, based in part on my finding that these physicians do not offer any opinion that Smith's injuries were caused by the alleged defect in the Cavalier's seatbelt system. According to Dr. Green, Smith's injuries were "consistent" with other cases of seatbelt injuries he has encountered during his medical practice. (Green Deposition at 28–29.) Dr. Green also has testified that it was his opinion to a reasonable degree of medical certainty that Smith's injury to her mesentery was a "seat belt type injury." (Green Deposition at 29.) Dr. Blanton testified that hollow organ injuries, such as the injury suffered by Smith, are "the most common kind of injury you see from a seat belt injury." (Blanton Deposition at 13.)

"[W]hether there is sufficient evidence to create a jury issue of those essential substantive elements of the action, as defined by state law, is controlled by federal rules." *Fitzgerald v. Manning*, 679 F.2d 341, 346 (4th Cir.1982) (citations omitted). Furthermore, "[t]he evidence must be fact-specific and not merely speculative. '[I]n order to qualify on causation, the opinion testimony of the medical expert may not be stated in general terms but must be stated in terms of a "reasonable degree of

medical certainty." ' " *Driggers*, 44 F.Supp.2d at 765 (quoting *Fitzgerald*, 679 F.2d at 350).

Where several factors could have caused an injury, a plaintiff " '*must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.' "*

*Driggers*, 44 F.Supp.2d at 765 (quoting *Fitzgerald*, 679 F.2d at 348 (quoting Prosser, Torts, 245 (3d ed.1964))).

"To ... take the question of causation to the jury, non-movant's evidence 'must indicate a reasonable scientific probability that the stated cause produced the stated result....' When 'evidence raises a mere conjecture, surmise and speculation as to [causation],' it is insufficient to present a question of causation to the jury.' "

*Driggers*, 44 F.Supp.2d at 765 (quoting *Hinson v. Nat'l Starch & Chem. Corp.*, 99 N.C.App. 198, 392 S.E.2d 657, 659 (1990)).

To say, such as is the case here, that an injury is "consistent" with a cause is to say no more than it is "possible" that this was a cause of the injury. Such evidence is insufficient to present a question of causation to a jury. Furthermore, it also would be insufficient under the facts and Smith's theory of this case if her treating physicians had stated to a reasonable degree of medical certainty that her injuries were caused by the Cavalier's seatbelt. It is undisputed that Smith was subjected to two separate impacts in this automobile accident. According to Smith's own evidence, the Cavalier's seatbelt functioned properly in the first impact, but malfunctioned in the second impact. Since Tennessee law requires Smith to prove that her injuries were caused by the defect alleged, Smith would have to prove that her injuries were sustained in the second impact. Neither Dr. Green nor Dr. Blanton has offered any opinion as to whether Smith's internal injuries were caused by the first or second impact.

I am not persuaded by Smith's argument that the defense expert, Dr. Banks, has provided evidence of medical causation which makes the entry of summary judgment inappropriate. While Dr. Banks has offered expert medical testimony that the injury to Smith's mesentery occurred in the second impact, his testimony in no way provides evidence that this injury was caused by the defect alleged by Smith. In fact, Dr. Banks's testimony is to the contrary. In particular, Dr. Banks has testified that, in his opinion, the Cavalier's lap belt could not have caused the middle band of contusions on Smith because the pattern of the lap belt did not match the pattern of the middle contusion. (Banks Deposition at 108.) Dr. Banks stated that "the orientation of the [lap] belt is completely different from the orientation of the middle bruise." (Banks Deposition at 109.) Dr. Banks further testified that it was his opinion that the injuries sustained by Smith were inconsistent with a submarining type event. (Banks Deposition at 110.) Dr. Banks also testified that, in his opinion, the injuries Smith sustained would not have occurred if she had placed the torso belt over her shoulder as opposed to under her arm. (Banks Deposition at 111.) Dr. Banks further testified that, in his opinion, the injury to Smith's mesenteric artery would not have occurred if the torso belt had been properly placed over her shoulder as opposed to under her arm. (Banks Deposition at 112.)

Therefore, based on the above-stated reasons, I will recommend that the court find that there is no genuine issue of material fact and grant summary judgment in GM's favor as a matter of law based on Smith's failure to produce expert medical evidence that her injuries were caused by the defect alleged. Based on this ruling, it is not necessary to address the remaining issues raised by GM in its motion for summary judgment, nor is it necessary to address GM's remaining motions in limine.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The undersigned now submits the following formal findings, conclusions and recommendations:

1. The court should apply Virginia's two-year statute of limitations for personal injury claims in this case;

2. Smith's claims are not time-barred; and

3. No genuine issues of material fact exist, and the court should grant summary judgment in GM's favor as a matter of law based on Smith's failure to produce expert medical evidence that her injuries were caused by the defect alleged in this case.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, the undersigned recommends that the court deny GM's motions in limine to exclude the expert opinions of Smith's treating physicians, (Docket Item Nos. 38 and 43), grant GM's motion to limit Benedict to the opinions disclosed in his Rule 26(a)(2)(B) report, (Docket Item No. 36), grant GM's motion in limine to exclude the expert opinions of Benedict only insofar as to exclude any opinions as to medical causation, (Docket Item No. 40), and grant GM's motion for summary judgment, (Docket Item 32). The undersigned further recommends that, should the court grant summary judgment in GM's favor, the court should deny GM's remaining motions in limine as being moot.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C):

Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]. The judge may also receive further evidence to recommit the matter to the magistrate [judge] with instructions.

Failure to file written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10–day period the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The clerk is directed to send copies of this Report and Recommendation to all counsel of record.

March 24, 2005.